**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ANDREY NAUMAN**                                                    **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 1:20-CV-144-HSO-JCG**

**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**


**REPORT AND RECOMMENDATION**

Plaintiff Andrey Nauman seeks judicial review of the decision of the

Commissioner of the Social Security Administration, denying his application for

Supplemental Security Income (SSI) under Title XVI of the Social Security Act

(SSA), 42 U.S.C. § 1382c(a)(3). The Commissioner found that Nauman has not been

disabled within the meaning of the SSA since the Application's filing, April 4, 2017.

Nauman seeks reversal or remand of the Commissioner's determination that he was

and is not disabled. Conversely, the Commissioner contends that the Court should

affirm the decision that Nauman was and is not disabled and asks the Court to

dismiss the complaint in its entirety and at cost to Nauman. Having considered the

submissions of the parties, the record, and relevant legal authority, the undersigned

United States Magistrate Judge recommends affirming the Commissioner's

decision.

**Procedural Background**

On April 4, 2017, Plaintiff Andrew Nauman, an eighteen-year-old, applied for

SSI. ECF No. 11 at 16. In his application, he alleged that his disability began on

November 8, 1998. *Id.* Nauman later amended his application to reflect a disability

1

onset date of April 4, 2017. *Id.* Nauman's claim was denied both initially and upon reconsideration. *Id.* Nauman subsequently filed a written request for a hearing before an Administrative Law Judge (ALJ) on July 24, 2017. *Id.* The ALJ held Nauman's hearing via video conference on October 23, 2018. *Id.*

During the hearing, the ALJ heard testimony from Nauman, as well as his mother, Catherine Braud. *Id.* at 50-85.  The ALJ also heard testimony from Ronnie Smith, a vocational expert. *Id.* at 85-88. On March 13, 2019, the ALJ rendered an unfavorable decision, holding that "[Nauman] has not been under a disability within the meaning of the Social Security Act since April 4, 2017, the date the application was filed." *Id.* at 16.

On May 9, 2019, Nauman requested a review of the ALJ's decision by the Appeals Council. *Id.* at 153-54. The Appeals Council denied his request for review on February 20, 2020, thereby rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 6-11. Having exhausted his administrative remedies, Nauman commenced the present action on April 17, 2020. ECF No. 1.

## Standard of Review

The Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475.

The court must, however, despite its limited role, "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Perales*, 402 U.S. at 390.

**THE ALJ's Decision**

In determining disability, the ALJ follows a five-step sequential evaluation process. *See* 20 C.F.R § 404.1520. The burden of proving disability rests upon the claimant throughout the first four steps of this process, and if the claimant is successful in sustaining his burden at each of the first four steps, the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 of Subpart P to 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(d). Accordingly, if a claimant's impairments meet the requisite criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525. Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental demands of his past relevant work. 20 C.F.R. § 404.1520(e).

If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner at step five to prove, considering the claimant's residual functional capacity (RFC), age, education, and past work experience, that he is

capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work that the claimant can perform exists (in significant numbers in the national economy), the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the instant case, the ALJ found at step one that Nauman had not engaged in substantial gainful activity since April 4, 2017, the application date. ECF No. 11 at 18. At step two, the ALJ found that Nauman has the following severe impairments: mood disorder, Attention Deficit Hyperactivity Disorder (ADHD), combined type, conduct disorder, autism spectrum disorder, and borderline intellectual functioning (BIF). *Id.* At step three, the ALJ determined that Nauman did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § 404. *Id.* at 19.

Next, the ALJ determined that Nauman has the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing only simple, routine tasks, with only occasional changes in the work routine; he is further limited to no more than occasional interaction with the public or co-workers.

*Id.* at 21. At step four, the ALJ concluded that Nauman had no past relevant work. *Id.* at 26.

The ALJ then moved to step five and found that there are jobs that exist in significant numbers in the national economy that Nauman could perform. *Id.* at 27. The Vocational Expert testified that an individual of Nauman's age, education,

work experience, and RFC could work as a kitchen helper, a medium, unskilled job with 407,400 jobs in the national economy; a hand packager, a medium unskilled job with 161,600 jobs in the national economy; and a bench assembler, a light, unskilled job with 221,640 jobs in the national economy. *Id*. at 86.

## Discussion

Nauman alleges five assignments of error:

(1) The ALJ erred in finding the Claimant's intellectual disorder and neurology were not "severe" when the record clearly shows that they meet listing criteria and certainly clear the "*de minimus*" hurdle to be considered severe;

(2) The Claimant was and is disabled by his impairments and the psycholog[i]cal evidence only supports a finding of disability from and after the amended onset date under the criteria of functional equivalence and the listings;

(3) The ALJ gave incorrect weight to the reports and opinions of the treating providers, examiners and agency reviewers, failed to evaluate the opinion evidence pursuant to 20 CFR 404.1520c, substituted her own opinions for those of treating reporters, failed to set forth good reasons for dismissing the findings and opinions of any supportive source, and failed to recontact when the ALJ had unresolved questions about an opinion;

(4) The ALJ ignored the regulations to avoid dealing with the treating psychologist's opinion of disability and simply ignored the finding by DDS Agency reviewers that the claim was supported by the medical evidence alone so should have been paid at the initial level; and

(5) The ALJ and Commissioner declined to follow/failed to correctly apply the law in this case, failed to fairly and fully consider all of the evidence as required by the administrative procedure and Social Security Acts, and the unfavorable decision is not supported by substantial evidence."

ECF No. 13 at 2-3.

Put simply, Nauman argues that the ALJ committed reversible errors under steps two and three of the five-step sequential process. And that the ALJ improperly considered the medical opinions in determining disability. The Court addresses each issue in turn.

## I. Whether the ALJ Committed a Reversible Error in Step Two

At step two of the five-step sequential evaluation, the claimant must prove that his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909 or a combination of impairments that is severe and meets the duration requirement, the ALJ will find the claimant is not disabled. 20 CFR § 416.920.

Nauman contends that the ALJ committed a reversible error by applying the wrong standard to determine severity.  ECF No. 13 at 11. Nauman further asserts that the ALJ erred in determining that his intellectual disorder and neurocognitive disorder were not "severe." *Id*. Conversely, the Commissioner asserts that the ALJ properly considered the evidence related to both the intellectual and neurocognitive disorders. ECF No. 14 at 6-9. Nonetheless, the Commissioner argues that even if the ALJ did commit an error in determining severity, the applicable regulations and Fifth Circuit precedent provide that the error is harmless because the ALJ proceeded to the later steps of the analysis. *Id*. at 7.

While it is true that the ALJ never cited *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), which provides the appropriate legal standard for determining the severity of the disability, procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In *Stone,* the Fifth Circuit held that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 at 1099 (5th Cir. 1985) (citing *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984).

The ALJ found that Nauman had the following severe impairments: mood disorder, ADHD, combined type, conduct disorder, autism spectrum disorder, and BIF. ECF No. 11 at 18. The ALJ held that these impairments "significantly limit [Nauman's] ability to perform basic work activities as required by SSR 85-28." *Id*.

Substantial evidence supports the ALJ's finding of non-severity as it relates to Nauman's intellectual and neurocognitive disorders. The ALJ properly considered the evidence relating to Nauman's intellectual functioning; finding Nauman had borderline intellectual functioning. *Id*. The ALJ reviewed a pediatric report which stated that Nauman had completed the eighth grade and would be entering regular ninth-grade classes with some in-class assistance but not full special education. *Id*. at 301. As well as a follow-up report from the same doctor stating Nauman had done well in his first semester of ninth grade. *Id*. at 305. The ALJ also reviewed an Individualized Education Program report that found Nauman did not meet the

8

criteria for having a significant cognitive disability. *Id*. at 583. Instead, the report

found that other factors significantly affected Nauman's academic performance. *Id*.

Likewise, Bridgewater psychiatric report found that Nauman had borderline

intellectual functioning. The ALJ also cited school testing from 2006 which found

that Nauman had a Composite Written Language standard score of 97, considered

average, a Composite Math Score of 82, considered low average, a Basic Reading

Skills standard score of 90, considered average, and a Composite Reading Score of

88, considered as low average. *Id*. at 23.

The mere presence of some impairment is not disabling per se. *Hames v. Heckler*,

707 F.2d 162, 165 (5th Cir. 1983). The claimant must show that his impairments

functionally precluded him from engaging in any substantial gainful activity. *Id*

(citing *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979)). Nauman fails to do so,

and any error by the ALJ in not following the procedures set out in *Stone,* 752 F.2d

1099, is harmless. Consequently, remand is not required since substantial evidence

supports the ALJ's finding that Nauman's intellectual and neurocognitive disorders

are not severe enough to prevent him from holding substantial gainful employment.

Furthermore, Nauman's argument that remand is required because the ALJ did

not deem the intellectual and neurocognitive disorders as severe, contradicts Fifth

Circuit precedent. The Fifth Circuit addressed a similar argument in *Herrera v.*

*Commissioner of Social Security*, 406 Fed. App'x 899 (5th Cir. 2010). The Court

"reject[ed] Herrera's contention that we must remand this case because the ALJ did

not explicitly determine the severity of Herrera's anxiety or alleged learning

disability . . ." *Id.* at 903. The Court held that "the ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two [was] not a basis for remand, because the ALJ concluded that despite his impairments Herrera was not disabled because "he retained the residual functional capacity to do other work." *Id.*

The present case is analogous to *Herrera.* Here, the ALJ found that Nauman had numerous "severe" impairments, proceeded to the later steps, and concluded that he retained the residual functional capacity to do other work. Therefore, the ALJ's failure to make a severity finding regarding Nauman's intellectual disorder and neurocognitive disorder does not warrant remand. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

Because there is substantial evidence to support the ALJ's step two finding, the decision must be affirmed. Regardless of whether there is evidence to support the other side. The Court's review of the ALJ's decision is a limited one, and the Court cannot reweigh the evidence or support its judgment for that of the Commissioner's.

## II. Whether the ALJ Committed a Reversible Error in Step Three

At step three of the sequential evaluation, the ALJ must determine whether the impairments meet or equal one of the listings under 20 C.F.R. pt. 404, subpt. P, App. 1, and meets the duration requirements. The burden is on the claimant to establish that his impairment "meet[s] *all* of the specified medical criteria." *Russo v. Saul*, 805 Fed. Appx. 269 (5th Cir. 2020) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Nauman asserts that the "ALJ made a clear and reversable error in her evaluation of Listing 12.05." ECF No. 13 at 13. And that he has satisfied the requirements under paragraphs B and C. *Id*. Likewise, Nauman contends that the paragraph B criteria are met "because of the vast history of [his] inability to interact with others and extreme impairment in the ability to adapt or manage himself." *Id*. Nauman further contends that the paragraph C criteria are met "since all of the severe conditions have lasted since years before the application date as shown by the extensive psychiatric record and persist with treatment." *Id*. Finally, Nauman asserts that he has met the listings for Organic Mental Disorder (12.02), Intellectual Disorder (12.05), ODD (12.08), Autism (12.10), and ADD (12.11). ECF No. 13 at 12.

Conversely, the Commissioner argues that the ALJ correctly found that Nauman's impairments did not meet Listing 12.05. ECF No. 14 at 11-13. The Commissioner also contends that the ALJ was correct in finding that Nauman failed to satisfy the Paragraph B criteria because he failed to show that his

impairments caused at least two "marked" limitations or one "extreme" limitation. *Id*. at 13-14. Likewise, the Commissioner asserts that the ALJ correctly found that Nauman satisfied Paragraph C because the evidence failed to establish the existence of marginal adjustment. *Id*. at 14-15. Finally, the Commissioner contends that "substantial evidence supports the ALJ's step three finding that Nauman's severe impairments – mood disorder; ADHD, combined type, conduct disorder; autism spectrum disorder; and BIF - did not, singularly or in combination, meet or equal one of the Listings." *Id*. at 10.

First, Nauman asserts that the ALJ made a reversible error in evaluating listing 12.05. ECF No. 13 at 13. Listing 12.05(B) provides that an intellectual disorder is established if a claimant meets the following criteria:

> 1. Significantly subaverage generally intellectual functioning evidenced by a or b:
>
>    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>
>    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>    a. Understand, remember, or apply information (see 12.00E1); or

       b. Interact with others (see 12.00E2); or

       c. Concentrate, persist, or maintain pace (see 12.00E3); or

       d. Adapt or manage oneself (see 12.00E4); and

   3. The evidence about [the claimant's] current intellectual and adaptive functioning and about the history of [the claimant's] disorder demonstrates or supports the conclusion that the disorder began prior to . . . age 22.

The claimant must "meet *all* of the specified medical criterial. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Ultimately, as long as the ALJ's findings concerning listing 12.05 are supported by substantial evidence, they "will not be disturbed." *McCaskill v. HHS*, No. 1:14-cv-24-HSO-RHW, 2015 WL 1457514, at *9 (S.D. Miss. Mar. 30, 2015) (citing *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)).

Here, the ALJ found that Nauman failed to satisfy the requirements of Paragraph B because he did not have the requisite test score ". . . ***and*** one extreme or two marked limitations in a broad area of functioning . . ." ECF No. 11 at 20-21 (emphasis added). The ALJ found that Nauman had a "moderate" limitation in the first category. The ALJ pointed to the State agency medical consultant's conclusion that "[Nauman] had the mental capacity to understand and carry out instructions for learning to perform routine and repetitive tasks." *Id*. at 19. Although there is certainly some evidence showing limitations in understanding, remembering, and

applying information, there is substantial evidence supporting the ALJ's finding of only a moderate limitation in this area. This Court will not re-weigh the evidence.

Next, the ALJ found that Nauman had a "moderate" limitation in the second category. The ALJ pointed to the testimony of Nauman's mother stating that he only had anger issues with his parents, a Specialized Treatment Facility (STF) note indicating that Nauman interacted appropriately with staff and peers, the conclusion of the State agency psychological consultant "that Nauman could interact adequately, on a limited basis, receive non-confrontational supervision and make mental adaptations to complete unskilled tasks in a work setting, especially those requiring very minimal interaction with other. *Id*. at 19-20. Although Nauman may have some limitations in this area, the ALJ is responsible for weighing this evidence. Given Nauman's mother's testimony, the STF Note, and the conclusion of the State agency, the ALJ's finding that Nauman had only a moderate limitation in interacting with others is supported by substantial evidence.

In the third category, concentrating, persisting, or maintaining, the ALJ found that Nauman had a "moderate" limitation. The ALJ pointed to an STF note showing "[Nauman] required redirection due to being easily distracted," and the State agency psychological consultant's conclusion that Nauman had the "mental capacity for maintaining attention and concertation for two-hour periods, sufficient for completing work tasks without excessive interruption from psychological symptoms." *Id*. at 19-20. The Court finds that substantial evidence exists to support

the ALJ's decision. While Nauman may have some limitations in this area, the Court may not re-weigh the evidence or substitute its judgment for that of the ALJ.

Finally, the ALJ found that in the fourth category, adapting or managing oneself, Nauman had a "moderate" limitation. In support of her conclusion, the ALJ pointed to the State agency's conclusion that "[Nauman] should be restricted from work tasks that bring children in contact with [him] due to the safety of the general public." *Id.* at 20. Because substantial evidence exists to support the ALJ's finding the Court must affirm.

Nauman also challenges the ALJ's finding that the Paragraph C criteria under 12.02 were not met. ECF No. 13 at 13-14. Listing 12.02(C) provides that a Neurocognitive disorder is established if a claimant meets the following criteria:

> C. Your mental disorder in this category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

Here, the ALJ determined that the record failed to "establish that [Nauman] has only marginal adjustment, that is, a minimal capacity to adapt to changes in [his]

environment or to demands that are not already part of [his] daily life." ECF No. 11 at 20. A review of the record provides substantial evidence for the ALJ's finding that Nauman had failed to establish the requisite marginal adjustment to satisfy Paragraph C.

With regards to Autism (12.10), the ALJ found that Nauman failed to meet the listing requirement "because he [did] not have medical documentation of both of the following: 1. Qualitative deficits in verbal communication, non-verbal communication and social interaction and 2. Significantly restricted, repetitive patterns of behavior, interest or activities AND one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." ECF No. 11. At 21. Regarding ODD (12.08) and ADD (12.11), the ALJ found that "[t]he Disability Determination Service concluded that" Nauman did not meet the listings. *Id*. The ALJ held that the "review of the additional records fails to note an impairment or impairments of greater severity than contemplated by the State Agency Consultants regarding Listings 12.08 or 12.11." *Id*.

Nauman has failed to carry the burden of explaining how his symptoms align with the criteria required in paragraph C or with Listings 12.08, 12.10, or 12.11. Accordingly, Nauman has not met the burden to demonstrate his disabilities meet the criteria under each listing, and the ALJ did not err in finding so. *Heck v. Colvin*, 674 F. App'x 411, 414–15 (5th Cir. 2017) (per curiam) (unpublished).

16

### III. Whether the ALJ Properly Evaluated the Opinion Evidence

Medical opinions, for applications filed on or after March 27, 2017, are to be considered in accordance with 20 CFR § 404.920c. No deference or any specific evidentiary weight, including controlling weight, is given to any medical opinion or prior administrative medical finding. 20 CFR § 404.920c(a). The ALJ must articulate in their decision the persuasiveness of all medical opinions. 20 CFR § 404.920c(b).  The regulation provides five factors for the ALJ to consider when evaluating medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 CFR § 404.920c(c). Consistency and supportability are the most important factors in determining persuasiveness. 20 CFR §404.920c(b)(2).

Nauman contends that the ALJ failed to consider all medical sources, and erroneously dismissed the treating physician's opinion and instead subsisted her own "desired but mistaken opinion." ECF No. 13 at 14, 22. Nauman further contends the ALJ did everything possible to avoid Dr. Susan Neimann-Hightower's opinion and erred in finding the DDS reviewers' opinion that Nauman was disabled valid. *Id*. at 16-18.

Conversely, the Commissioner asserts that the ALJ properly "considered the medical evidence from the medical sources who treated and examined [Nauman], as well as the opinions from the medical sources who reviewed the evidence." ECF No. 14 at 15. The Commissioner further asserts that the ALJ did not err in considering Dr. Neimann-Hightower's specialization, or the persuasiveness of her medical

source opinion or the opinions provides by the State Agency consultants. *Id*. at 16-18. Finally, the Commissioner represents that the ALJ did not substitute her own opinion for the medical sources, but instead applied the credible medical, testimonial, documentary evidence to determine Nauman's RFC. *Id*. at 19.

The Court first turns to Nauman's assertion that the ALJ failed to follow the regulations when evaluating the medical opinions. Nauman contends that "[t]he regulation requires that all medical opinions will be weighed, regardless of source." In support of this position Nauman cites a portion of a Middle District of Tennessee case, *Kaye v. Social Security Administration*, stating "the ALJ must consider such factors as the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source, to determine what weight to give the opinion." 2018 WL 3572395 at 5*.

The undersigned finds that case inapplicable to the present case.[1] In *Kaye*, the claimant's social security application was filed on March 12, 2013. Consequently, the Court applied 20 CFR § 404.1527, in evaluating the opinion evidence. *Id*. at 3-6. *See* 20 CFR § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017)." In the present case, Nauman's application was filed on April 4, 2017, thereby invoking a different regulation, 20 CFR § 404.1520c. See 20 CFR §

---

[1] The Court notes Nauman's disagreement with the regulations, but disagreement is not a license to disregard the commands of duly enacted regulations. *See* Plaintiff's Brief ECF No. 13 at 14-15.

404.1520c (stating "[f]or claims filed (see § 404.614) on or *after March 27, 2017*, the rules in this section apply) (emphasis added). Consequently, the ALJ did not assign any specific evidentiary weight in accordance with 20 CFR § 416.920c's command.

Next, the Court turns to Nauman's argument that the ALJ "did everything she could to avoid considering arguably the most important medical opinion in the case, from Dr. Susan Neimann-Hightower." ECF No. 13 at 16. Nauman first contends that the ALJ gave no "weight" to Dr. Neimann-Hightower's medical opinion, and if the opinion had been given the proper "weight it would have established disability," is without merit. Yet, as previously explained, under the regulations, for claims filed after March 27, 2017, the ALJ does not "give any specific evidentiary weight . . . to any medical opinions." 20 CFR § 416.920c.

Nonetheless, an examination of the ALJ's opinion shows that she did consider the medical opinion of Dr. Neimann-Hightower. The ALJ found Dr. Neimann-Hightower's opinion inconsistent with the record as a whole and unpersuasive. *Id*. Moreover, the ALJ stated that "[t]he undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c)." *Id*.

For claims filed after March 27, 2017, the ALJ is not required to provide any analysis about how they considered evidence that is deemed inherently neither valuable nor persuasive. 20 CFR § 416.920b. This extends to the consideration of medical evidence under § 416.920(c). One category of evidence that is inherently neither valuable nor persuasive is "statements on issues reserved to the

19

Commissioner" 20 CFR § 416.920b(c)(3). As the ALJ noted in her opinion, she did consider the opinion of Dr. Neimann-Hightower "at least to the extent it does not address issues reserved to the Commissioner." ECF No. 11 at 26. Because the ALJ found the remainder of the opinion neither valuable nor persuasive she did not further opine on it.

Likewise, the ALJ properly evaluated the opinions of the State agency consultants Dr. Herzog and Dr. James. The ALJ held that the opinions of Dr. Herzog and Dr. James were "persuasive." *Id*. After laying out the finding of Dr. Herzog, the ALJ concluded that Dr. James had "affirmed Dr. Herzog's opinion." *Id*.

For these reasons, the undersigned finds that the ALJ properly evaluated the medical opinions of Dr. Neimann-Hightower, Dr. Herzog, and Dr. James. Concerning Dr. Neimann-Hightower, substantial evidence supports the ALJ's finding that the portion of her opinion not on issues reserved to the Commissioner was inconsistent with the record. As to the portion of her opinion on issues reserved to the Commissioner, the ALJ properly determined it to be inherently neither valuable nor persuasive. With respect to the opinions of Dr. Herzog and Dr. James substantial evidence supports the ALJ's finding that both opinions were supported by and consistent with the record.

## Recommendation

Based on the above analysis, the undersigned United States Magistrate Judge recommends that the judgment of the Commissioner should be affirmed.

## Notice of the Right to Object

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. Civ. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 9th day of July 2021.

*s/ John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE